T.C. Memo. 2000-386


UNITED STATES TAX COURT


KENNETH M. AND DELORES J. HAIRSTON, Petitioners
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12452-98.                    Filed December 20, 2000.


<u>Wylie Joseph Neal</u>, for petitioners.

<u>C. Glenn McLauglin</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Judge</u>:  For taxable years 1995 and 1996, respondent determined deficiencies of $11,620 and $5,994, respectively, in petitioners' Federal income taxes.

The primary issue for decision is whether petitioners' equipment rental activity constitutes a passive activity under section 469(c)(2).

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years in issue.

FINDINGS OF FACT

The parties have stipulated some of the facts, which are so found. When they filed their petition, petitioners resided in Tulsa, Oklahoma.

Since 1985, petitioners have owned and operated Hairston, Inc. (Hairston), a subchapter C corporation engaged in the business of leasing heavy construction equipment to third parties. During 1995 and 1996, petitioners were employed full time by Hairston.

During 1993 through 1996, petitioners purchased in their names eight pieces of heavy construction equipment (petitioners' equipment). They leased this equipment to Hairston, which subleased petitioners' equipment to its customers (end users).

Petitioners entered into a written lease agreement with Hairston reflecting the lease of petitioners' equipment to

Hairston (the lease agreement).[1] Petitioners' equipment was essentially the same type of heavy construction equipment that also was owned directly and leased by Hairston to its end users. Throughout 1995 and 1996, petitioners' equipment was stored in and subleased from Hairston's rental equipment storage yard, where petitioners' equipment was commingled with Hairston's equipment.

As consideration for leasing their equipment to Hairston, the lease agreement states that petitioners "may be" paid by Hairston up to 40 percent of Hairston's basic end-user lease

---

[1]  The entire lease agreement between petitioners and Hairston, Inc., provided as follows:

### EQUIPMENT LEASE AGREEMENT

Ken and Delores Hairston may from time to time purchase equipment by check or personal bank loan and may lease that equipment to Hairston, Inc. dba A.I.M. Equipment Rental.

A.I.M. Rental will assume all responsibility for the leased equipment, providing insurance, collecting and paying appropriate taxes, etc.

Ken and Delores may be paid up to 40% of the basic rental rate only (excludes tax, fuel, delivery and p.u. charges).  Repairs to maintain the equipment may be charged against the amount paid to Ken and Delores Hairston.

Payments may be paid each quarter or when sufficient revenues have been collected.

Ken and Delores will calculate and maintain records and will be responsible for loan re-payments and personal income taxes.

charge.  Consequently, as compensation for subleasing petitioners' equipment to end users, Hairston was entitled to retain at least 60 percent of the basic rental charge to the end users.  In addition, Hairston retained 100 percent of additional end-user fees such as taxes and charges for delivery and fuel.

Pursuant to the lease agreement, Hairston assumed "all responsibility" for petitioners' equipment.  Hairston was required to service and maintain the equipment, to provide insurance, and to collect and pay any taxes on the equipment. Hairston was to make or arrange for all repairs and to charge petitioners for the repair costs by subtracting them from the 40-percent portion of the end-user lease payments Hairston might otherwise pay to petitioners.  During 1995 and 1996, Hairston charged petitioners only minimal amounts for repairs on petitioners' equipment.

The officers and employees of Hairston, including petitioners, were responsible for supervising and performing maintenance and repairs on petitioners' equipment and on the equipment owned by Hairston, for dealing with the end users, and for billing and collecting lease payments from end users of the equipment.  Occasionally, after hours or on weekends, petitioners would check on the status of the equipment they personally owned.

The sublease agreements between Hairston and the end users typically had terms of 7.93 days in 1995 and 11.63 days in 1996. All of petitioners' equipment was leased to end users in the name of and under lease agreements with Hairston, not with petitioners.

On their 1995 and 1996 joint Federal income tax returns, with regard to the lease of their equipment, petitioners claimed Schedule C ordinary deductions under section 162, reported rental income from Hairston, and claimed net losses after depreciation as follows:

| Year | Sec. 162 Expenses | Rental Income | Net Losses |
|------|---------|---------------|------------|
| 1995 | $1,371 | [1] $15,000 | $58,899 |
| 1996 | 350 | 37,500 | 38,499 |

[1] On audit for 1995, respondent charged petitioners with an additional $22,800 in unreported income from the lease of their equipment, to which additional income petitioners agree.

OPINION

Section 469(a)(1) limits the deductibility of losses from certain passive activities of individual taxpayers. Generally, a passive activity includes the conduct of a trade or business in which the taxpayer does not materially participate. In addition, rental activity (except certain rental activity involving real estate) is generally treated as a passive activity without regard to whether the taxpayer materially participates. See sec. 469(c)(1), (2), (4), (7).

Rental activity is defined as any activity where payments are principally for the use of tangible property.  See sec. 469(j)(8); sec. 1.469-1T(e)(3)(i), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988).

Petitioners contend that under the applicable temporary regulations, their equipment rental activity qualifies for two exceptions from the above definition of rental activity.

First, rental activity will not be treated as such for purposes of section 469 where the average period of customer use of the property is 30 days or less and where significant personal services are provided by or on behalf of the owner of the property in connection with making the property available for use by customers.  See sec. 1.469-1T(e)(3)(ii)(B), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988).[2]

Second, otherwise passive rental activity will not be treated as such for purposes of section 469 where extraordinary personal services are provided by or on behalf of the owner of the property in connection with renting the property to customers (without regard to the average period of customer use).  See sec. 1.469-1T(e)(3)(ii)(C), Temporary Income Tax Regs., 53 Fed.

---

[2]  The temporary regulations provide additional exceptions to the definition of rental activity, but petitioners do not claim that their equipment rental activity qualifies for any of the additional exceptions.  See sec. 1.469-1T(e)(3)(ii)(D), (E), and (F), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988).

Reg. 5702 (Feb. 25, 1988). For this purpose, extraordinary personal services are provided only if performed by individuals and the customers' use of the property is incidental to their receipt of the services. See sec. 1.469-1T(e)(3)(v), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988).

The lease agreement had an indefinite term and extended over a number of years. Petitioners' equipment was maintained in the equipment yard of Hairston and was available for use and sublease by Hairston at all times throughout each year. Under section 1.469-1(e)(3)(iii)(A) and (D), Income Tax Regs., Hairston's right to use petitioners' equipment is properly treated as one period of customer use extending for the entirety of each taxable year.

Petitioners contend that they had an agency, not a lease, relationship with Hairston and that they individually should be regarded as the lessors of their equipment to end users for average periods of customer use of less than 30 days. Petitioners' contention is contrary to the evidence and is rejected. In light of the form of the lease agreement and the course of conduct between petitioners and Hairston, under Oklahoma law, the arrangement with regard to petitioners' equipment constituted a lease from petitioners to Hairston (i.e., a transfer of the right of possession and use of property for a term in return for consideration). See Okla. Stat. tit. 12A, sec. 2A-103(j) and (k) (1991).

Accordingly, we conclude that the average period of use by Hairston of petitioners' equipment exceeded 30 days.  On this score alone, petitioners fail to satisfy the requirements of the first exception described above.

Moreover, the evidence does not establish that petitioners in their individual capacities provided either significant or extraordinary personal services in connection with making their equipment available for use either by petitioners' customer (namely, Hairston) or for use by Hairston's customers under the subleases.  Under the terms of the lease agreement between petitioners and Hairston, petitioners individually had little or no responsibility for upkeep and maintenance of the equipment.  Rather, Hairston assumed "all responsibility" for the equipment.

The services of petitioners as officers and employees of Hairston in maintaining all of the equipment and in handling subleases of the equipment to end users do not qualify as services of petitioners (or as services rendered on behalf of petitioners) as owners of the equipment.  Under the lease agreement with Hairston, petitioners were not obligated as owners of the equipment to provide any services to Hairston or end users.  Any services that petitioners might have performed as Hairston officers or employees were unrelated to petitioners' obligations as owners of the equipment.

In any event, no credible evidence supports petitioners' contention that significant or extraordinary services were performed either by them or on their behalf as owners of the equipment. Personal services were not a dominant or significant aspect of either the equipment rental relationship between petitioners and Hairston or of the relationship between Hairston and end users. See Frank v. Commissioner, T.C. Memo. 1996-177. The evidence does not establish that the type, frequency, and value of the services that were provided to end users by petitioners, as owners of the equipment or as officers and employees of Hairston, were significant in comparison to the value of the use of the equipment by end users. See sec. 1.469-1T(e)(3)(iv) and (v), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988).

Petitioners cite a portion of the legislative history of section 469 which describes a short-term rental of automobiles as not constituting a rental activity under section 469 where the lessor furnishes significant services. See S. Rept. 99-313, at

742 (1986), 1986-3 C.B. (Vol. 3) 1, 742.[3]  This legislative history provides petitioners little support.  As previously discussed, petitioners provided no significant services in their capacities as lessors to Hairston or as owners of the equipment. Moreover, their property rentals were not short term, since their lease of their heavy construction equipment to Hairston was for an indefinite term.

Petitioners' equipment rental activity constitutes a passive rental activity subject to the loss limitations of section 469.

<u>Decision will be entered for respondent</u>.

_____

[3] The Senate report states in pertinent part:

> For example, an activity consisting of the short-term leasing of motor vehicles, where the lessor furnishes services including maintenance of gas and oil, oil changing and lubrication and engine and body repair, is not treated as a rental activity.  By contrast, furnishing a boat under a bare boat charter, or a plane under a dry lease (i.e., without pilot, fuel, or oil), constitutes a rental activity under the passive loss rule, because no significant services are performed in connection with providing the property. [S. Rept. 99-313, at 742 (1986), 1986-3 C.B. (Vol. 3) 1, 742.]